IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 08-cv-02808-WDM-BNB

DAVID KRAUS,

Plaintiff,

v.

VICKIE FERRARI, in her individual and official capacities, and
THE CITY AND COUNTY OF DENVER, a municipality,

Defendants.

---

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

---

Miller, J.

This case is before me on the Motion for Summary Judgment (ECF No. 39) filed by Defendant Vickie Ferrari ("Officer Ferrari") and the Motion for Summary Judgment (ECF 44) filed by the City and County of Denver ("Denver"). Plaintiff opposes the motions. I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, Officer Ferrari's motion will be denied and Denver's motion will be granted.

Background[1]

This is a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff contends that he was arrested without probable cause, placed in handcuffs with excessive force, and arrested in retaliation for exercising in First Amendment protected speech as a result of an interaction with Officer Ferrari in which he asked her to move her patrol car because it was

---

[1]The following facts are taken from the parties' briefs and attached exhibits and are undisputed unless otherwise noted.

blocking access to his business.

The relevant events occurred on June 27, 2007, when Officer Ferrari, a member of the Denver Police Department, was working with a team conducting traffic stops in the area of Colfax and Corona in Denver, Colorado. A license plate of a stopped vehicle was reported stolen and Officer Ferrari was providing backup to the officers engaged in the stop. The driver of the car had been cleared but the stop continued. Officer Ferrari believed that it would create a traffic hazard to park behind the stopped car and so parked in a Grease Monkey parking lot located on the same corner. Officer Ferrari's marked police car partially blocked the main entrance of the Grease Monkey, but other entrances were still available on other sides of the building. In a written statement provided for an internal investigation, Officer Ferrari reported that at the time she pulled into the parking lot, she was engaged in logging the stop and providing cover for the ongoing traffic stop.

Plaintiff, the manager of the Grease Monkey facility, approached Officer Ferrari's car and requested that she move her vehicle either to another location or at least a few feet over so that the entrance could be used. Officer Ferrari stated she would not do so. According to Plaintiff, Officer Ferrari did not inform Plaintiff that she was providing cover for the stop by continuing to observe her fellow officers but rather simply stated she was not going anywhere. Plaintiff contends he was polite and calm while making this request; Officer Ferrari believed that he was taking an aggressive posture with her.

Plaintiff then requested her business card and the telephone number of her supervisor. Officer Ferrari refused to do so but stated she would have her supervisor call Plaintiff. She told Plaintiff to return to the station, which he did. It is undisputed that Plaintiff was carrying a loaded handgun during this interaction, for which he had a

concealed weapons permit; Officer Ferrari was not aware of this at the time, however. Officer Ferrari at some point called her supervisor on her cell phone. In her deposition testimony, Officer Ferrari stated that it was not interference or improper for Plaintiff to ask her to contact her supervisor.

There is a factual dispute as to how long Plaintiff remained in the office to wait for the supervisor's call. Plaintiff and Stanley Painter, another Grease Monkey employee who witnessed the events, testified in their depositions that it was approximately 10 minutes. Officer Ferrari claims that it was less than a minute. Plaintiff did not receive a call from Officer Ferrari's supervisor and went back to the car. Again, Plaintiff contends that he spoke calmly and politely, requesting that the car be moved and the supervisor come to the location, but that Officer Ferrari reacted angrily. Mr. Painter, who could only partially hear the conversation, confirms that Plaintiff was not yelling or agitated. Officer Ferrari asserts that Plaintiff was yelling at her and distracting her from her observation of the stop. Officer Ferrari was speaking with her supervisor at the time and held the phone out the window so that the conversation with Plaintiff could be heard. There is no evidence from the supervisor who allegedly heard the call. The conversation lasted one or two minutes. Plaintiff became frustrated and said something to the effect of "I'm done here, please get your supervisor down here" and started to go back to the service station.

According to Officer Ferrari's deposition testimony, Officer Ferrari's supervisor gave her authorization to arrest Plaintiff. Officer Ferrari stepped out of her vehicle and ordered Plaintiff to stop (or, according to Plaintiff, to come back to the police car). Officer Ferrari claims in a written statement that she told Plaintiff he was under arrest before he turned to walk away; Plaintiff denies this. Plaintiff was near the station and said something like "No,

I haven't done anything wrong" and continued into the station, in part because he wanted witnesses to any further encounter. Mr. Painter reports that he heard Officer Ferrari then say loudly something like "I gave you a direct order to stop," at which time Plaintiff did stop. Officer Ferrari followed Plaintiff to the service station bay and told him to put his hands behind his back. According to Plaintiff and Mr. Painter, Plaintiff complied and stood quietly as the handcuffs were applied. Officer Ferrari, however, contends that Plaintiff spun away from her to avoid being handcuffed. Mr. Painter observed that Officer Ferrari "slammed" Plaintiff against the wall and aggressively jerked Plaintiff's arms to place the handcuffs on, at which time she ordered Plaintiff to "stop resisting." Plaintiff and Mr. Painter contend that Officer Ferrari was angry, flushed in the face, and had an aggressive demeanor at the time of the arrest and that she was yelling and screaming at Plaintiff that he had "f-ed up."

Sometime before or after she took him back to the police car, Officer Ferrari conducted a pat-down search of Plaintiff. Plaintiff informed her of the gun in his pocket, but it is disputed whether he told her this before or after she discovered it in the search. According to Plaintiff, he also informed her that his permit was in his wallet in the office. It was Plaintiff's practice to keep his wallet in the office while he worked in the pit because otherwise it would get greasy. Plaintiff told Officer Ferrari that the right handcuff was too tight and asked her to loosen it. According to Officer Ferrari, she had previously taken note that the handcuffs were applied properly and deemed it unsafe to loosen the handcuffs because of Plaintiff's previous "aggressive" behavior. According to Plaintiff, she told him to "tough it out."

Officer Ferrari transported Plaintiff to the police department and placed him in a holding cell, at which time the handcuffs were removed. Plaintiff estimates that the

handcuffs were on for 30 to 45 minutes, including the time he was waiting at the scene. Officer Ferrari charged Plaintiff with Interference, Denver Mun. Ordinance § 38-31(a) and a concealed weapons permit violation, C.R.S. § 18-12-204(2)(a). Plaintiff contends that Officer Ferrari verbally badgered him in the vehicle during the drive to the station, saying things like "you f-ed up."

All charges against Plaintiff were dismissed. He filed administrative complaints and a report to the monitor's office about the incident. After an investigation, Officer Ferrari received the lowest form of written counseling in her personnel file for the incident and was told by a supervisor that she could have handled the situation "differently." Captain Eric Ruben, the City and County of Denver's 30(b)(6) representative, stated that the charge of interference was "weak."

After the incident, Plaintiff complained to coworkers that his wrists hurt and that he had numbness in his right hand. Mr. Painter observed red marks on Plaintiff's wrists. Plaintiff went to a physician's assistant a few days after the incident and was diagnosed with nerve compression syndrome based on his reported symptoms. Plaintiff was told that there was no treatment and that the injury would either improve or not as time passed. The owner of the Grease Monkey, Steve Smith, observed that Plaintiff wore a sling on his wrist for a few weeks and that he had trouble performing certain tasks; for example, Plaintiff was unable to put pressure on a windshield squeegee to wash a windshield and had trouble gripping and twisting oil filters. After the litigation commenced, Plaintiff submitted to a nerve conduction study, which indicated no impairment or injury. In the opinion of the examining physician, Plaintiff suffered at most a "mild" injury if any. Plaintiff complains of continued numbness and decreased strength in his hand. Plaintiff also reports emotional injuries,

such as heightened wariness and nervousness around police officers, sleep difficulties, and withdrawal.

Plaintiff's Amended Complaint contains the following claims for relief, all asserted pursuant to 42 U.S.C. § 1983: (1) Fourth Amendment Violation - Unlawful Seizure; (2) Excessive Force; (3) Retaliation in Violation of First Amendment; (4) Retaliation in Violation of Fifth Amendment; (5) Constitutional Failure to Train and Supervise, asserted against Denver. After review of Defendants' arguments in their motions for summary judgment on the Fourth Claim for Relief (Fifth Amendment Retaliation), Plaintiff agreed to voluntarily dismiss this claim. Resp. to Ferrari Mot. for Summ. J., ECF No. 53, at 28.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## Discussion

Officer Ferrari moves for summary judgment on the basis of qualified immunity. Denver moves for summary judgment on the grounds that Officer Ferrari did not violate Plaintiff's constitutional rights or, alternatively, if she did it was not pursuant to any policy or custom of the City and County of Denver, which precludes municipal liability.

### A. Qualified Immunity Claimed by Officer Ferrari

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known."

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Supreme Court held that the court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818.

1. Seizure without Probable Cause

Officer Ferrari contends that she is entitled to qualified immunity on Plaintiff's First Claim, unlawful seizure, because she had probable cause to arrest him as he had committed several offenses in her presence. Specifically, she claims that he diverted her attention away from covering other officers to deal with Plaintiff's demands, which constitutes interference under Denver Municipal Ordinance § 38-31(a). This ordinance provides that it is unlawful "for any person, in any way, to interfere with or hinder any police officer, any member of the police department, or any person duly empowered with police authority, while such officer, member, or person duly empowered with police authority is discharging or apparently discharging their duties." I note, however, that the Colorado Supreme Court has interpreted similar ordinances to this as requiring an element of intent, and so Officer Ferrari also would have to have had probable cause to believe that Plaintiff by his conduct intended to divert her attention from covering the other officers. *City of Englewood v. Hammes*, 671 P.2d 947 (Colo. 1983) (construing a similar municipal interference statute and concluding that it contains an implied *mens rea* element or would

otherwise be unconstitutionally overbroad).

In her deposition testimony, Officer Ferrari does not contend that Plaintiff interfered with or hindered her discharge of her duties by requesting to speak with her supervisor but rather by yelling at her. However, there is a factual dispute as to whether Plaintiff was yelling. Plaintiff and Mr. Painter also testified in their depositions that they did not see any other police cars at the time of the interaction, which raises a question of whether the stop had concluded at the time that Plaintiff approached Officer Ferrari the second time. There is also no evidence that Officer Ferrari informed Plaintiff that she was observing the other officers and that was the reason for her presence on the Grease Monkey lot. Given the undisputedly short period of the interaction, Captain Ruben's characterization of arrest as "weak," the dismissal of the charges, and the significant factual dispute as to whether Plaintiff did anything more than politely and calmly request that Officer Ferrari move her vehicle and that her supervisor be made available (which Officer Ferrari affirmatively states was not an interference with her duties), a reasonable jury could conclude that Officer Ferrari did not have probable cause to arrest Plaintiff for interference. *See Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (holding that "one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer").

Officer Ferrari contends that Plaintiff also violated the law by not stopping when ordered and proceeding into the service station. Officer Ferrari asserts that this provided "further probable cause to effect Plaintiff's arrest, because it hindered her ability to effect Plaintiff's arrest". Ferrari Mot. for Summ. J., ECF No. 39, at 10. This argument is unavailing. If Officer Ferrari had no basis for arresting Plaintiff, it did not constitute a further

violation to not assist in the unlawful arrest.[2] Moreover, there is again an issue of fact regarding the circumstances of the order to stop. Although Officer Ferrari contends that she informed Plaintiff that he was under arrest before he turned to go back to the service station, Plaintiff disputes this. If Plaintiff was merely terminating a consensual interaction with a police officer and was not told he was under arrest, it is unclear to me what law he would have violated by continuing on his way. *People v. Dixon*, 21 P.3d 440 (Colo. App. 2000) (no probable cause to arrest defendant for failure to comply with lawful order where defendant was passenger in parked car and walked away from the car after police stop and did not return when ordered; "there was no evidence suggesting that he was running or otherwise fleeing in a manner indicating evasive intent . . . . the officer's description of defendant's approach to the house suggests that defendant was simply walking from the parked car towards the house that was his planned destination."). Construing the evidence in the light most favorable to Plaintiff, I again conclude that a jury could find that Officer Ferrari did not have probable cause to arrest Plaintiff for failing to stop when she first ordered him to do so.

Officer Ferrari does not expressly argue that she had probable cause to arrest Plaintiff for carrying a firearm without a concealed weapons permit. Since she did not discover that Plaintiff was carrying a weapon until after she had arrested him, this would

---

[2]It appears that Officer Ferrari is arguing that Plaintiff could have been arrested under another municipal ordinance, § 38-31(c) (failure to obey a lawful order). This ordinance states that it is unlawful to "fail to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his official duties." Again, failing to stop when first commanded does not amount to any kind of interference with Officer's Ferrari's duties if she had no basis to arrest Plaintiff and had not told him he was under arrest.

be irrelevant to whether her initial seizure of him was lawful.

Officer Ferrari does not dispute the second prong of the qualified immunity test, that the constitutional right be well-established. Therefore, I conclude that summary judgment is not appropriate in favor of Officer Ferrari's assertion of qualified immunity on Plaintiff's First Claim for Relief.

2. Excessive Force

Plaintiff's Second Claim for Relief is based on the injuries allegedly received from Officer Ferrari handcuffing him, which he contends was excessive force. Excessive force claims are evaluated under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the level of force used is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Id*. at 396 (citations omitted). Some of the factors to be considered include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the individual is actively resisting arrest or attempting to evade arrest by flight. *Id*. These factors must be considered with "allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 397. The inquiry is an objective one, focused on "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." *Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008).

"In some circumstances, unduly tight handcuffing can constitute excessive force

where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). The alleged injury, be it physical or emotional, however, must be more than *de minimis*. *Id*.

Again, I conclude that Plaintiff has presented genuine issues of material fact sufficient to preclude summary judgment on the basis of qualified immunity. There is evidence that Plaintiff immediately complained that the handcuffs were too tight. In addition, there is evidence of an injury that is more than *de minimis*. Plaintiff's evidence is that he had pain and numbness for some time that interfered with his grip and ability to do his job. Moreover, he contends that he still has symptoms. Even if there is no actual nerve damage, a jury could find that Plaintiff sustained an injury sufficient to show that Officer Ferrari used excessive force, particularly if the jury believes evidence that Officer Ferrari was angry, slammed Plaintiff against the wall and forcefully jerked his arms back to apply the handcuffs. Plaintiff has also presented evidence of emotional injury.

Officer Ferrari further argues that her actions were reasonable because she determined the cuffs were applied appropriately and she reasonably believed Plaintiff posed a threat to her safety. However, the standard here is objective reasonableness. If a jury credits Plaintiff's versions of events, the manager of a business politely and calmly made appropriate requests of a police officer, got frustrated and started to walk back to his place of business, was pursued by a police officer who was angry and hostile at his verbal objections to her conduct, did not resist arrest and complied when told to put his hands behind his back, and then requested that the cuffs be loosened after he was subdued and unarmed and other officers were present. The crime of which Plaintiff was accused was

a municipal ordinance and not severe, Plaintiff posed no threat, and, if he and Mr. Painter are believed, did not resist arrest or attempt to flee. Under these circumstances, a jury could conclude that Officer Ferrari acted unreasonably and out of anger, rather than out of concern for officer safety, in applying the handcuffs too tightly, telling him to "tough it out," and then requiring Plaintiff to wait up to 45 minutes before the cuffs were removed.

Officer Ferrari also argues that there was no clearly established law to put her on notice that her conduct could be unconstitutional. I agree with Plaintiff that *Cortez* and cases cited therein, which directly addressed handcuffing, show that it was clearly established that knowingly applying handcuffs in such a manner as to cause pain and injury could constitute excessive force. Accordingly, summary judgment is not appropriate for this reason.

3. <u>Retaliation for Exercise of First Amendment Rights</u>

Plaintiff's Third Claim for Relief alleges that Officer Ferrari retaliated against him for exercising his protected First Amendment rights. To establish a § 1983 retaliation claim, Plaintiff must plead and prove (1) that he was engaged in a constitutionally protected activity; (2) that Defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Defendant's action was substantially motivated as a response to Plaintiff's exercise of his First Amendment speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Plaintiff must also plead and prove the absence of probable cause for the prosecution. *Id*.

Officer Ferrari moves for summary judgment on this claim on the grounds that Plaintiff was not engaged in protected speech, Plaintiff cannot prove Officer Ferrari acted with retaliatory animus, and, alternatively, that any alleged constitutional right was not

clearly established. As discussed above, there is an issue of fact as to whether there was probable cause to arrest Plaintiff for interference. Therefore, I consider the other elements of Plaintiff's prima facie case.

Again construing the facts in the light most favorable to Plaintiff, I examine whether politely and calmly requesting a police officer to move her car, requesting to speak to a supervisor when the request is refused, and then objecting to the continued presence of the officer and lack of communication from the supervisor, amounts to protected speech. I also assume for the purposes of summary judgment that it was not apparent to Plaintiff that Officer Ferrari was engaged in covering a traffic stop and that she needed to be free of distractions.

It is well established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 462 (1987). In *Hill*, the United States Supreme Court struck down as overbroad a municipal ordinance that conceivably criminalized conduct amounting to no more than verbally "interrupting" a police officer while in the performance of his or her duties. If a jury were to find that Plaintiff did no more than verbally interrupt Officer Ferrari, this would clearly fall within the scope of protected speech, particularly if Officer Ferrari at no time informed Plaintiff that she was engaged in observation and needed to continue that task.[3] "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation

[3]According to Officer Ferrari, she told Plaintiff she would move when she had finished conducting her "business." Ferrari Dep., Exh. A to Ferrari Mot. for Summ. J., ECF No. 39-2, at 26.

from a police state." *Hill*, 482 U.S at 462-63. Officer Ferrari cites *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008) as support for her qualified immunity argument. However, I find *King* distinguishable, as the defendant in *King* was repeatedly interfering with an interview in a criminal investigation and was warned by the officer that he would be arrested if he persisted. Similarly, *Johnson v. Estate of Laccheo*, cited by Officer Ferrari, is distinguishable. 935 F.2d 109, 100 (6th Cir. 1991) (security guard did not engage in protected speech by refusing to permit officer pursuing individual to enter parking lot).

I also disagree that Plaintiff cannot prove retaliatory animus. According to Plaintiff and his witness, after Plaintiff for a second time objected to the police car's blocking of his business access, Officer Ferrari reacted angrily, was flushed in the fact, walked fast and with an aggressive and hostile demeanor. The alleged force used in the arrest and the refusal to adjust the handcuffs could be interpreted by a jury as showing an intent to punish Plaintiff for his protected conduct. Similarly, if a jury believes that Officer Ferrari badgered Plaintiff in the police car after the arrest by saying he had really "f-ed up," a jury could conclude that this was evidence of retaliatory motivation.

Because significant issues of fact remain concerning the existence of probable cause to arrest Plaintiff, whether Plaintiff's speech was protected, and whether Officer Ferrari's conduct showed that the arrest was motivated by retaliatory anger rather than probable cause to believe a crime had occurred, summary judgment on the first prong of the qualified immunity test is not appropriate. Moreover, because Plaintiff's right to be free of a retaliatory arrest for conduct amounting to no more than non-obstructive verbal interruption was well established at the time, the second prong does not provide a basis for summary judgment either.

B. <u>Municipal Liability of Denver</u>

Denver moves for summary judgment on the grounds that Plaintiff can show no constitutional violation or, alternatively, that even if a violation were shown, Plaintiff cannot show that his injuries were caused by a governmental policy or custom. As discussed above, there are issues of fact precluding a finding that Plaintiff did not suffer a constitutional injury. Therefore, I examine whether Plaintiff can establish that any such injury was caused by a governmental policy or custom.

A municipality or other governmental entity is not subject to liability simply because it was the employer or principal; instead, liability under section 1983 accrues only where the action alleged to be unconstitutional executes or implements a governmental policy or custom. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). Denver would not be liable under section 1983 solely because its employee inflicted injury. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *Monell*). Rather, municipal liability would require (1) the existence of a policy or custom; and (2) a direct causal link between the policy or custom and the injury alleged. *Id*. (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989)). "When the claim is a failure to act, the plaintiff must demonstrate the [governmental entity's] inaction was the result of 'deliberate indifference' to the rights of its inhabitants." *Id*. (punctuation omitted). Under Tenth Circuit law, the deliberate indifference standard may be satisfied "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999); *see also Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (a supervisor or municipality may be held liable where there

is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable).

Plaintiff's claims against Denver are based on a theory of failure to train or supervise. To prevail against Denver for failure to train in use of force, Plaintiff must demonstrate that there was inadequate training and each of the following elements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). Assuming that a constitutional violation occurred as described above, the issues remaining as to municipal liability concern the adequacy of the training, deliberate indifference, and causation.

Principally based on parsing some of Officer Ferrari's deposition testimony, Plaintiff offers the following evidence to establish that Officer Ferrari was not adequately trained: (1) Officer Ferrari was never specifically trained that handcuffs can cause serious injury, including nerve damage, if applied too tightly; (2) the police academy only devotes a few minutes to teaching about potential injuries from tight handcuffs; (3) at the police academy, only four of the 85 hours of training in law are devoted to constitutional law; (4) no recent training bulletins have specifically addressed First Amendment issues; (5) Officer Ferrari has not taken a continuing education class on First or Fourth Amendment issues except on issues of crowd control for the Democratic National Convention; (6) Officer Ferrari receives no ongoing training in the law; and (7) Denver does not do anything to ensure that

training bulletins are read. Plaintiff then concludes, without citing any authority, that training was "grossly" or "certainly" insufficient. Plaintiff presents no direct evidence, by expert opinion or other admissible evidence, that Denver's training was inadequate. Proof of inadequacy is the first requirement of his claim. *Brown*, 227 F.3d at 1286 (10th Cir. 2000) ("In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove the training was in fact inadequate . . . .").

Denver presents evidence establishing that it has policies in its operations manual regarding use of force and arrest procedures. The use of force guidelines are 32 pages long, require an officer to use "only that degree of force necessary and reasonable under the circumstances," and contains detailed explanations of the factors to be considered in decisions regarding force or control, applicable law, use of force options, procedures, review procedures, and other pertinent information for officers. Exh. I to Denver's Mot. for Summ. J., ECF No. 44-10, at 105-1. Similarly, the policies and procedures regarding arrests amount to over 70 pages of detailed explanations of general procedures and law regarding arrests and searches, including the requirement of probable cause for a warrantless arrest. Exh. J to Denver's Mot. for Summ. J., ECF No. 44-11, 44-12, 44-13. Plaintiff does not contend that there is any legal deficiency in these official policies or that they would have sanctioned Officer Ferrari's allegedly unconstitutional conduct. Moreover, Denver provides evidence that its police academy training, including video training, teaches officers to make sure handcuffs fit snugly but are not over tightened. Denver provides training in constitutional law, including First Amendment rights, and officers receive continuing education and ongoing training bulletins. Denver also has a system of investigation and disciplinary guidelines and procedures to ensure compliance with its

policies, as well as an independent monitor. Denver argues, therefore, that its training is adequate and any improper conduct by Officer Ferrari was not caused by any failure on the part of Denver to train or supervise her.

Plaintiff's evidence is insufficient to create a genuine issue of fact as to whether Officer Ferrari's conduct, if it occurred as alleged by Plaintiff, was caused by a governmental policy or custom of Denver of failing to adequately train its officers and that Denver was deliberately indifferent to the need to provide such training. As discussed above, Plaintiff's evidence of the inadequacy of the training amounts to critiques over the content and amount of time devoted to certain subjects but with no evidence as to what would be a standard or appropriate amount of training in these areas. Moreover, Plaintiff offers no evidence of deliberate indifference. Plaintiff does not have facts to indicate that Denver had actual or constructive notice of the need to provide additional training or supervision regarding First Amendment rights of persons interacting with officers, handcuff application, or the need for probable cause to support an arrest, or even of the elements of the interference statute. *See Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) (merely enumerating alleged multiple deficiencies in city's training with no evidence of knowledge of the purported deficiencies by city officials is inadequate to show deliberate indifference); *Barney*, 143 F.3d at 1307-09 (deliberate indifference may be found if a violation of federal rights is "highly predictable" or a "plainly obvious" result of a municipality's failure to train employees to handle recurring situations). Given the detailed policy manuals and extensive training of officers, which indicate that Denver is aware of its obligation to train in these areas, Plaintiff's evidence is not adequate to raise a genuine issue of fact regarding deliberate indifference. *Carr*, 337 F.3d at 1230 (experts' reliance

on absence of specific training to show inadequate policy "merely demonstrate[s] the omniscience of hindsight" rather than satisfying deliberate indifference standard).

Finally, Plaintiff has offered no evidence to show a causal link between any alleged inadequacies in training and the injuries he suffered. As a threshold matter, Plaintiff has not shown that Officer Ferrari was inadequately trained, *i.e*., that she was unaware that she needed probable cause before she could arrest a suspect or that she believed she could arrest a suspect for exercising First Amendment rights if he was not committing any other violation of law. There is no indication that she was not trained in the proper technique for fitting handcuffs or in the use of force in effecting an arrest, even if she was not informed that a specific type of injury could result from improper handcuffing. Rather, Plaintiff essentially makes a *post hoc, ergo propter hoc* argument, *i.e.*, constitutional violations may have occurred, therefore the constitutional injury was caused by inadequate training. This will not satisfy Plaintiff's burden as to this element. *Carr*, 337 F.3d at 1231 (despite laundry list of assertedly inadequate training, plaintiff provided no evidence of how training or lack thereof actually resulted in excessive force used in particular situation).

Because Plaintiff's evidence fails to establish several key elements of the *Monell* and *Canton* requirements for municipal liability, summary judgment in favor of Denver should be granted.

Accordingly, it is ordered:

1. The Motion for Summary Judgment (ECF No. 39) filed by Defendant Vickie Ferrari is denied. The claims against Officer Ferrari in her individual capacity remain pending.

2. The Motion for Summary Judgment (ECF 44) filed by the City and County of

Denver is granted. Summary judgment shall enter in favor of the City and County of Denver and against Plaintiff on all claims. Denver may have its costs.

DATED at Denver, Colorado, on August 30, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge